FILED
2006 Jul-17  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
| ) | |
| vs.                              ) | CR 05-B-0257-NW |
| ) | |
| TADRIC BROWN, DARRYL ) | |
| RUSSELL, RAUL TOPETE, AND ) | |
| LARRY YARBROUGH, ) | |
| ) | |
| Defendants.                     ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on the Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, made by defendant Raul Topete. At the close of the government's case, Topete moved for judgment of acquittal as to all counts against him in the Superceding Indictment. The court reserved decision on the Motion as it pertained to Count Eight, (see Fed. R. Crim. P. 29(b)), and submitted the case to the jury. The jury returned a verdict of guilty against defendant Topete on all counts against him in the Superceding Indictment.

Upon further consideration of the law and the evidence adduced during the government's case-in-chief, the court is of the opinion that Topete's Motion for Judgment of Acquittal as to Count Eight is due to be denied.

In this Circuit, a district court, considering a Motion for Judgment of Acquittal –

> must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. The prosecution need not rebut all reasonable hypotheses other than guilt. The jury is free to choose between or among the

conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury.

*United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005)(quoting *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir.1989)). With this standard in mind, the court now considers defendant Topete's Motion for Judgment of Acquittal as to Count Eight of the Superceding Indictment.

Count Eight of the Superceding Indictment charges defendant Raul Topete with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). (Doc. 245.)[1] Section 1956(a)(1)(A)(i) states:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> > (A)(i) with the intent to promote the carrying on of specified unlawful activity . . . .
> > . . .
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i).

In this Circuit –

> To obtain a conviction on a substantive Section 1956(a)(1)(A)(i)

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

promotion charge, the Government bears the burden of proving beyond a reasonable doubt that: (1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew the property involved in the transaction represented the proceeds of unlawful activity; (3) the property involved was in fact the proceeds of the specified unlawful activity; and (4) the defendant conducted the financial transaction "with the intent to promote the carrying on of [the] specified unlawful activity."

*United States v. Calderon*, 169 F.3d 718, 721 (11th Cir. 1999).

Under the terms of the statue, an individual "conducts" a financial transaction when he "initiat[es], conclud[es], or participat[es] in initiating, or concluding a transaction." 18 U.S.C. § 1956(c)(2). A "financial transaction" is defined as:

> (3) the term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition . . . .;
>
> (4) the term "financial transaction" means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments,[2] or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree;

*Id*. (c)(3)-(4).

The government was required to establish that Topete conducted the financial transaction with the intent to promote the carrying on of specified unlawful activity. *Id*. (a)(1)(A)(i). The government contended in its Letter Brief Regarding Money Laundering, (doc. 426 at 2-3), that a "post – 'point of sale' carrying, transfer or disposition of drug

---

[2]"Monetary instrument" includes United States currency. 18 U.S.C. § 1956(c)(5)(i).

money, for the purpose of continuing the criminal conspiracy or enterprise, constitutes promotional money laundering." It contends:

> [M]oney laundering requires the completion of the underlying offense, in this case, the distribution of a controlled substance. Therefore, while a transfer of money for drugs at the "point of sale" will normally not constitute the offense of money laundering, any subsequent carrying, transfer, or other disposition of proceeds from the sale of a controlled substance **after** the "point of sale" constitutes money laundering. In the context of "fronting" drugs, then, any such post-"point of sale" carrying, transfer or disposition of drug money, for the purpose of continuing the criminal conspiracy or enterprise, constitutes promotional money laundering.

(*Id*. (footnotes omitted and emphasis in original).) The government contends that the evidence in this case shows subsequent use of drug proceeds to promote the ongoing, unlawful activity. (*Id*. at 7.)

Receipt of money as payment for drugs provided on consignment with the cash received from the sale of such drugs *may* constitute promotional money laundering, but only if the government shows that the defendant conducted such a financial transaction "***with the intent to promote the carrying on of specified unlawful activity***," as required by the plain meaning of 18 U.S.C. § 1956(a)(1)(A)(i).[3]

The Eleventh Circuit has held:

---

[3] "Under the rules of statutory construction, one applies the 'plain meaning' rule by first looking to actual language used in a statute to determine its meaning. Only when the statutory language is shown to be ambiguous may a court look to legislative history." *United States v. Williams*, 425 F.3d 987, 988-89 (11th Cir. 2005)(citing *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001)). Moreover, "this being a criminal statute, it must be strictly construed, and any ambiguity must be resolved in favor of lenity." *United States v. Enmons*, 410 U.S. 396, 411 (1973)(citations omitted)

4

>Money laundering is an offense to be punished separately from an underlying criminal offense. *United States v. Edgmon*, 952 F.2d 1206, 1213 (10th Cir. 1991)(finding that Congress intended money laundering and other specified unlawful activity to be distinct offenses punished separately). The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a "completed offense" after which money laundering can occur. *United States v. Kennedy*, 64 F.3d 1465, 1477-78 (10th Cir. 1995).

*United States v. Christo*, 129 F.3d 578, 579-80 (11th Cir. 1997). However, it has "not decided in the context of 'fronting' drugs when the underlying offense has been completed," or whether the use of proceeds to promote *past* unlawful activity constitutes promotional money laundering. *United States v. Smart*, No. 04-12245, 135 Fed. Appx. 337, 341-42 and n.5 (Jun. 16, 2005); *Calderon*, 169 F.3d at 722 n.5. However, in dicta, the court has implied that the promotional money laundering statute is aimed at conduct that encourages or facilitates *future* crimes, stating:

>Section 1956(a)(1)(A)(i) has been referred to as the promotion prong of the money laundering statute. *Calderon*, 169 F.3d at 722 n.5. For sentencing purposes, a defendant convicted under the promotion prong receives a base offense level of 23, U.S.S.G. § 2S1.1, while one convicted under the concealment prong, Section 1956(a)(1)(B)(i), receives a base offense level of 20. *Id*. A greater punishment is applied to those defendants who encourage or facilitate the commission of *further* crimes. U.S.S.G. § 2S1.1, commentary.

*United States v. Majors*, 196 F.3d 1206, 1212 n.11 (11th Cir. 1999)(emphasis added).

Interpreting the promotional money laundering statute to apply to a defendant that has conducted a financial transaction with the intent to "encourage or facilitate the commission of *further crimes*," *see Majors*, 196 F.3d at 1212 (emphasis added), but not *past* unlawful activity, follows the plain meaning of the statute. Clearly, the plain meaning of the term

5

"carrying on" is *continuation* or *furtherance* into the future of the unlawful activity, and the term "promote" is synonymous with *encourage* or *facilitate*. Therefore, the court finds that the plain language of § 1956(a)(1)(A)(i) requires the government to prove (1) after completion of the unlawful activity that produced proceeds, defendant conducted a financial transaction involving such proceeds, and (2) defendant conducted the financial transaction with the specific intent to *encourage or facilitate the continuation of the unlawful activity*. Under this interpretation, evidence of the mere receipt by the supplier of the proceeds of drug trafficking activity as payment for fronted drugs is not sufficient evidence to support a finding of the specific intent to promote the carrying on of unlawful activity, because the act of receiving proceeds as payment for fronted drugs does not allow for an inference as to the intended subsequent use of such proceeds.

In *Smart*, the Eleventh Circuit noted that other jurisdictions had "split on whether payments to a supplier pursuant to a 'fronting' arrangement can be considered laundering." *Smart*, 135 Fed. Appx. at 341-42.[4]

---

[4]The *Smart* court stated:

Other circuit courts addressing this issue, however, have split on whether payments to a supplier pursuant to a 'fronting' arrangement can be considered laundering. *Compare United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999)("Payment for drugs may constitute 'promotion' for the purposes of the money laundering statute when such payment encourages further drug transactions."); *United States v. Baker*, 63 F.3d 1478, 1494 (9th Cir. 1995)(stating that paying a supplier was laundering which "promotes" the carrying on of the unlawful activity because the defendant "could not have continued the illegal trafficking without paying his . . . suppliers"); *United*

6

The court notes, "In limited contexts, evidence showing that a *dealer* used the proceeds of drug trafficking to pay for the drugs the *dealer* sold is sufficient proof of money laundering" as such payments can be found to insure future supplies of drugs for future sales. *United States v. Dovalina*, 262 F.3d 472, 476 (5th Cir. 2001)(citing *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999); *United States v. Martinez*, 151 F.3d 384, 389 (5th Cir. 1998); *United States v. Baker*, 63 F.3d 1478, 1494 (9th Cir. 1995); *United States v. Torres*, 53 F.3d 1129, 1137 n.6 (10th Cir.1995); *United States v. Skinner*, 946 F.2d 176, 177-78 (2d Cir. 1991))(emphasis added). However, with regard to a promotional money laundering claim against a *supplier*, "the Government [is] required to prove that [*supplier*] used at least part of the proceeds in a subsequent financial transaction with the intent to promote unlawful activity." *Id*. A dealer may be found to have assured his continuing supply of drugs for sale by payment to his supplier; thus, such payment to the supplier may be sufficient to demonstrate the required intent to support the dealer's conviction for

---

*States v. Torres*, 53 F.3d 1129, 1137 n.6 (10th Cir. 1995)(finding that using proceeds from the sale of drugs "fronted" to a dealer to buy more drugs "satis[ied] the 'promotion' element of 1956(a)(1)(A)(i)"), *with United States v. Dovalina*, 262 F.3d 472, 476 (5th Cir. 2001)(concluding that a "promotion money laundering offense cannot be established merely by evidence of a single buyer's repeated payments to a distributor"); *United States v. Heaps*, 39 F.3d 479, 485 (4th Cir.1994)(reversing a conviction for money laundering and noting that "[w]ere the payment for drugs itself held to be a transaction that promoted the unlawful activity of that same transaction[,] virtually every sale of drugs would be an automatic money laundering violation as soon as money changed hands").

*Smart*, 135 Fed. Appx. at 341-42.

promotional money laundering. However, a supplier's mere receipt of payment for his product, even if the payment is made with the proceeds of illegal drug trafficking some time after delivery to the dealer, is not sufficient circumstantial evidence of the supplier's intent to promote the carrying on of unlawful activity.

The intent required by the plain meaning of the statute is the intent to "promote" – facilitate or encourage – the "carrying on" – continuation or furtherance – of the unlawful activity. Some circuits have held that promotional money laundering requires evidence of reinvestment of the proceeds back into the criminal activity; indeed, the Eighth Circuit refers to money laundering under section 1956(a)(1)(A)(i) as "reinvestment" money laundering. *See United States v. Hildebrand*, 152 F.3d 756, 762 (8th Cir. 1998), *cited in United States v. Jolivet*, 224 F.3d 902, 910 (8th Cir. 2000)("recognizing the statute require[s] the government to prove that the defendants expended illegally-obtained proceeds in order to further promote the [unlawful activity]"). Likewise, the Seventh Circuit has held that "[a] transaction satisfies the promotion provision of the money laundering statute if it constitutes 'the practice of ***plowing back proceeds of [the illegal activity] to promote that activity***.'" *United States v. Febus*, 218 F.3d 784, 789 (7th Cir. 2000)(quoting *United States v. Jackson*, 935 F.2d 832, 842 (7th Cir. 1991))(emphasis added).[5]

---

[5] The Ninth Circuit does not require a showing that proceeds were reinvested or plowed back into the unlawful activity; it requires only that the transaction was necessary for defendant to realize a benefit from his unlawful activity. *United States v. Wilson*, 39 Fed. Appx. 495, 498 (9th Cir. 2002)(citing *United States v. Montoya*, 945 F.2d 1068 (9th Cir. 1991), *abrogated on other grounds by McCormick v. United States*, 500 U.S. 257 (1991);

The Fourth, Fifth, and Tenth Circuits have required a showing of a financial transaction intended to support the ***continuation*** into the future of the unlawful activity. *See United States v. Dovalina*, 262 F.3d 472, 476 (5th Cir. 2001)(Government required to prove that supplier "used at least part of the proceeds [received from dealer as payment for drugs] in a ***subsequent*** financial transaction with the intent to promote unlawful activity.")(emphasis added); *United States v. Heaps*, 39 F.3d 479, 486 (4th Cir. 1994)("mere receipt" of proceeds without evidence of the ***subsequent*** use of such proceeds to promote unlawful activity is not sufficient evidence to prove promotional money laundering); *United States v. Edgmon*. 952 F.2d 1206, 1213-14 (10th Cir. 1991)(In a § 1956(a)(1)(B)(i) case, the court held, "The Senate report and [§ 1956] itself indicate that the Congress intended simply to add a new criminal offense to punish activity that was not previously punished criminally. Congress aimed the crime of money laundering at conduct that ***follows in time*** the underlying crime rather than to afford an alternative means of punishing the prior 'specified unlawful activity.'")(emphasis added). The Eleventh Circuit, in a concealment money laundering case under § 1956(a)(1)(B), held that the financial transaction must "follow in time" the completion of the underlying unlawful activity. *Majors*, 196 F.3d at 1212 ("A violation of the concealment provision must '***follow in time***' the completion of the underlying transaction

---

*United States v. Manarite*, 44 F.3d 1407 (9th Cir. 1995)). Clearly, evidence that the transaction was necessary for defendant to benefit from his criminal activity is not evidence of an intent to promote the carrying on of unlawful activity. The Ninth Circuit's interpretation of § 1956(a)(1)(A)(i) is overly broad and punishes activity outside the scope of the plain language of the statute.

9

as an activity designed to conceal or disguise the origins of the proceeds." (citing *United States v. Dimeck*, 24 F.3d 1239, 1246 (10th Cir.1994)))(emphasis added).

Based on the foregoing, the court finds that evidence that Topete received proceeds of drug trafficking from Garth in payment for drugs he had fronted to Garth is not sufficient evidence to support a conviction for promotional money laundering. Rather, in order to sustain Topete's conviction, the court must find that the evidence demonstrates a subsequent financial transaction involving the proceeds received from Garth that Topete intended to promote – encourage or facilitate – the carrying on – continuation or furtherance – of the unlawful activity – drug trafficking. Evidence of a financial transaction that promotes the carrying on of the unlawful activity of drug trafficking includes evidence of the purchase of more drugs,[6] payments to couriers or conspirators involved in the criminal enterprise,[7] purchases of items used in the drug trafficking enterprise,[8] and payments of travel expenses.[9]

Garth testified that he and Topete had an arrangement whereby Topete would front him large quantities of marijuana and cocaine and, when Garth sold the drugs, he would pay Topete and Topete would buy more drugs. He testified Topete told him, "[W]hen you get

---

[6] *United States v. Torres*, 53 F.3d 1129, 1137 n.6 (10th Cir. 1995).

[7] *United States v. Lozano*, No. 03-40404, 2005 WL 3478052 at *6 (5th Cir. Dec. 20, 2005); *Dovalina*, 262 F.3d at 476; *United States v. Puig-Infante*, 19 F.3d 929, 940-41 (5th Cir. 1994).

[8] *Dovalina*, 262 F.3d at 476; *Puig-Infante*, 19 F.3d at 940; *Jackson*, 935 F.3d at 841.

[9] *Dovalina*, 262 F.3d at 476; *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999).

a certain amount [of money], you just get it [to] me, and I can just go on and send off for some more [drugs]." The evidence is sufficient to support the jury's verdict against Topete for promotional money laundering. Also, in a taped conversation with Garth on October 13, 2004 in which the two discussed a drug deal, Topete said that he had learned that he needed to "put something away," and "don't put it all into the business." (Ex. 33 at 5.) A reasonable jury could find that Topete used the proceeds paid to him by Garth to promote the carrying on of his business of drug dealing.

Therefore, drawing all reasonable inferences from the evidence in favor of the government and applying the law to that evidence, the court finds that defendant Topete's Motion for Judgment of Acquittal as to Count Eight is due to be and hereby is **DENIED**.

**DONE**, this the 17th day of July, 2006.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE