FILED
2021 Mar-05  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | **3:05-CR-00257-SLB-HNJ-15** |
| | ) | |
| **RAUL TOPETE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter comes before the court on a motion for compassionate release filed *pro se* by Defendant Raul Topete.  (Doc. 838).[1]  In his motion, Mr. Topete seeks compassionate release because he states that he is at high risk from the current COVID-19 pandemic based on his underlying health conditions.  Although Mr. Topete does not cite the statute directly in his initial motion, the court construes the motion as seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  After reviewing the submissions of the parties, the court finds that Mr. Topete has shown extraordinary and compelling reasons meriting compassionate release under Section 3582(c)(1)(A).  Thus, the court will grant Mr. Topete's motion.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

## I.     BACKGROUND

Mr. Topete, along with multiple codefendants, was involved in a wide-ranging drug conspiracy starting around 1999.  (Doc. 618).  In 2006, a jury convicted Mr. Topete of one count of money laundering and one count of conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana and 5 kilograms or more of cocaine.  (Doc. 432, doc. 620).  The court originally sentenced Mr. Topete to a total of 324 months of imprisonment, a sentence at the bottom of the applicable Sentencing Guideline range.  (Doc. 620; doc. 679 at 34, 58–9).  At sentencing, the court considered varying downward from the Sentencing Guidelines and only sentencing Mr. Topete to 20 years' imprisonment because he did not have a criminal record; ultimately, however, the court found that the 324-month minimum sentence under the Sentencing Guidelines was reasonable based on factors set forth in 18 U.S.C. § 3553(a) because Mr. Topete was part of a major drug conspiracy involving a large amount of drugs.  (Doc. 679 at 51–61).

The court later granted a motion to reduce Mr. Topete's sentence based on changes to the Sentencing Guidelines, so Mr. Topete is now serving a 262-month sentence.  (Doc. 814).  However, Mr. Topete has an immigration detainer, so he faces deportation proceedings and a possible deportation to Mexico upon his

release from prison.  (Doc. 859-11 at 8).[2]

Mr. Topete is incarcerated at CI McCrae.  *See* https://www.bop.gov
/inmateloc/ (last visited March 5, 2021).  According to information from the
Bureau of Prisons, CI McCrae has no active cases of COVID-19, 25 recovered
inmates, and 1 inmate death from COVID-19 as of March 5, 2021.  *See*
https://www.bop.gov/coronavirus/ (last visited March 5, 2021).  Mr. Topete has
served 15 years of his sentence—roughly 70% of his full term of imprisonment and
80% of his statutory term of imprisonment—and is currently scheduled for release
on March 11, 2024.  (Doc. 859-11 at 1).  He has had three disciplinary incidents
while incarcerated, but none of the incidents were violent and the most recent took
place in October of 2010.  (*Id.*).   He has also taken more than 20 educational
courses while incarcerated.  (*Id.* at 1–2).

Mr. Topete is now 53 years old.  (Doc. 852-1).  During his time in prison,
Mr. Topete has developed type 2 diabetes.  (Doc. 838; doc. 852-2).  Mr. Topete's
medical records also show that he is obese, suffers from hypertension, and likely
suffers from a previously undiagnosed chronic liver condition.[3]  Additionally, in

---

[2] The court expresses no opinion on Mr. Topete's immigration status, but his
prison records reveal that he has a detainer and faces possible deportation.  (Doc.
859-11 at 7–8).

[3] Dr. Orlando Turner provided a Declaration to Mr. Topete's counsel
opining on Mr. Topete's health based on Mr. Topete's medical records and Dr.
Turner's experience and research.  (Doc. 859-7).  Dr. Turner is a physician,
hospitalist, and infectious disease specialist at the University of Alabama at

April of 2020, Mr. Topete contracted COVID-19 and had to go to the hospital because the virus affected his heart.  (Doc. 852-3).  Mr. Topete's medical records, on their own, are unclear to a lay person regarding whether he suffered a heart attack at that time or only had an episode of tachycardia (elevated heart rate); his records appear to list an incident of a myocardial infarction (heart attack) along with the tachycardia, but later records list only tachycardia and not a heart attack. (Doc. 852-2 at 57; doc. 852-3).  However, Dr. Turner, the physician who reviewed Mr. Topete's medical records, stated that Mr. Topete did have a "mild heart attack."  (Doc. 859-7 at 11).  When Mr. Topete went to the hospital for his COVID-related cardiac incident, his physician prescribed a six-month course of metoprolol to control Mr. Topete's elevated heart rate.  (Doc. 852-2; doc. 852-3). Mr. Topete no longer has any COVID-19 symptoms or elevated heart rate, though he still takes the metoprolol.  (Doc. 852-2; doc. 852-3).

After contracting COVID-19, Mr. Topete requested compassionate release from the warden at his correctional institution, but more than 30 days passed without a response from the warden.  (Doc. 859-10).  So, Mr. Topete filed his instant compassionate release motion with the court.

---

Birmingham Hospital.  He has treated many COVID-19 patients and works on a COVID-19 task force and a COVID-19 research committee.  Based on Mr. Topete's medical records, including lab results, Dr. Turner identified the likelihood of Mr. Topete having a previously undiagnosed chronic liver condition.

## II.    STANDARD OF REVIEW

The court construes Mr. Topete's motion for compassionate release as being filed pursuant to 18 U.S.C. § 3582(c)(1)(A).  Section 3582, as amended by the First Step Act, states that courts generally cannot alter or modify a term of imprisonment after its imposition, but the court can reduce an inmate's term of imprisonment upon a motion for sentence modification from the Bureau of Prisons or from a prisoner, where the prisoner has exhausted administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Prior to passage of the First Step Act, however, courts could only reduce an inmate's sentence under Section 3582(c)(1)(A) upon a motion from the Director of the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A) (effective November 2, 2002 to December 20, 2018).  The First Step Act amended Section 3582(c)(1)(A) to allow courts to also reduce a defendant's term of imprisonment upon a motion filed directly by the defendant, after the exhaustion of administrative remedies.  Section 603(b) of the First Step Act of 2018, Pub. L. 115 391, 132 Stat. 5194; 18 U.S.C. § 3582(c)(1)(A).

Upon a prisoner's exhaustion of administrative remedies, Section 3582(c)(1)(A) allows a court to modify the prisoner's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable" *if* the court finds that "extraordinary and compelling reasons warrant such a reduction" *and* finds that "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement for Section 3582(c)(1)(A), found in U.S.S.G. § 1B1.13, states that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C § 3582(c)(1)(A), the court may reduce a term of imprisonment […] if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," the court finds that (1) "extraordinary and compelling reasons warrant the reduction" or that the defendant meets certain age-based requirements, (2) the defendant is not a danger to the community, and (3) "[t]he reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.  The commentary to U.S.S.G. § 1B1.13 provides a list of specific circumstances that qualify as "extraordinary and compelling," including medical conditions, age, and family circumstances.  U.S.S.G. § 1B1.13 cmt. 1(A)–(C).  The list culminates in subsection (D), a catchall provision entitled "other reasons," which states that extraordinary and compelling reasons exist where, "as determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* at cmt. 1(D).  Accordingly, the policy statement limits extraordinary and compelling circumstances to those listed in the commentary or determined by the Director of the Bureau of Prisons.  *Id.*  The commentary for U.S.S.G. § 1B1.13 also includes a provision stating that a sentence

reduction "under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons [...]." *Id.* at cmt. 4.

Some question exists concerning whether the policy statement as set forth in U.S.S.G. § 1B1.13 actually applies to Section 3582(c)(1)(A) motions filed directly by prisoners after the passage of the First Step Act. In its only published opinion concerning a motion for compassionate release based on COVID-19 filed by a prisoner, the Eleventh Circuit stated in a footnote that, in that particular case, "We need not and do not reach the issue of whether the district court was required to consider § 1B1.13." *United States v. Harris*, No. 20-12023, 2021 WL 745262, at *3 n. 2 (11th Cir. Feb. 26, 2021). The Eleventh Circuit has yet to issue a published opinion on the question of what Sentencing Commission policy statements apply to motions for compassionate release filed by prisoners rather than the Bureau of Prisons. *United States v. Gist*, No. 20-13481, 2020 WL 7227282, at *2 n.2 (11th Cir. Dec. 8, 2020) (unpublished) (noting that the Eleventh Circuit has recently held oral argument implicating the issue but has not yet put forth a decision resolving the applicability question). Further, the current unpublished opinions from the Eleventh Circuit offer little clear guidance.

In one unpublished opinion, a panel of the Eleventh Circuit stated that the Sentencing Commission had identified the circumstances listed in the commentary to U.S.S.G. § 1B1.13 as "constituting 'extraordinary and compelling reasons'"

7

warranting relief, and affirmed the district court's denial of a motion for compassionate release because the prisoner's situation did not fall under the circumstances listed in the commentary. *United States v. Wedgeworth*, No. 20-12316, 2020 WL 7389350, at \*1–\*2 (11th Cir. Dec. 16, 2020) (unpublished) (citing U.S.S.G. § 1B1.13, cmt. 1). In a similar unpublished opinion, the court stated that "[a] district court must find that a sentence reduction for extraordinary and compelling reasons is consistent with policy statements issued by the Sentencing Commission" and explained that U.S.S.G. § 1B1.13 provides "examples of extraordinary and compelling reasons for a sentence reduction." *United States v. Mantack*, 833 F. App'x 819 (11th Cir. 2021). However, the Court did not explicitly state in either case that any policy statement was applicable for motions filed by prisoners or that no other circumstance could qualify as "extraordinary and compelling."

In another unpublished opinion, a different panel of the Eleventh Circuit observed that "notably" the policy statement in U.S.S.G. § 1B1.13 "has not been amended since the First Step Act was passed and refers only to a sentence reduction upon a motion from the BOP Director." *Id.* at \*1. Other recent unpublished opinions have not directly addressed the applicability of policy statements to Section 3582(c)(1)(A) motions filed by prisoners. *See, e.g., United States v. Winner*, 835 F. App'x 1002, 1003 (11th Cir. 2020) (unpublished); *United*

*States v. Rind*, No. 20-12860, 2020 WL 7392878 (11th Cir. Dec. 17, 2020)

(unpublished); *United States v. Boykin*, No. 20-12111, 2021 WL 210705 (11th Cir.

Jan. 21, 2021) (unpublished).  Accordingly, the current Eleventh Circuit

jurisprudence does not give a clear answer on the question of whether the

Sentencing Commission policy statement applies and binds the court where a

prisoner files a motion for compassionate release under Section 3582(c)(1)(A).

Considering the lack of binding precedent or clear direction from the

Eleventh Circuit, this court turns to the developing trend of jurisprudence in other

Circuits.  In September of 2020, the Second Circuit held that the policy statement

in U.S.S.G. § 1B1.13 does *not* apply to Section 3582(c)(1)(A) motions filed by

prisoners, rather than the Bureau of Prisons, because the language of the policy

statement is clearly outdated and states explicitly in multiple places that it applies

upon motions filed by the Director of the Bureau of Prisons.  *United States v.*

*Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  Specifically, the Second Circuit

stated

> we look also to Application Note 4, which says that "[a] reduction
> *under this policy statement* may be granted only upon motion by the
> Director of the Bureau of Prisons pursuant to 18 U.S.C.
> § 3582(c)(1)(A)."  U.S.S.G. § 1B1.13, n.4 (emphasis added).  And we
> conclude that after the First Step Act, this language must be read not
> as a description of the former statute's requirements, but as defining
> the motions to which the policy statement applies.  A sentence
> reduction brought about not "upon motion by the Director of the
> Bureau of Prisons" is not a reduction "under this policy statement."
> *Id.*  In other words, if a compassionate release motion is not brought

by the BOP Director, Guideline § 1B1.13 does not, by its own terms,
apply to it. Because Guideline § 1B1.13 is not "applicable" to
compassionate release motions brought by defendants, Application
Note 1(D) cannot constrain district courts' discretion to consider
whether any reasons are extraordinary and compelling.

*Id.* (emphasis in original). Accordingly, the Second Circuit held that courts have

discretion "to consider the full slate of extraordinary and compelling reasons that

an imprisoned person might bring before them in motions for compassionate

release." *Id.* at 237.

Now, the Fourth, Sixth, and Seventh Circuits have agreed with the Second

Circuit's holding in *Brooker* and have held that there is no applicable Sentencing

Commission policy statement where a prisoner directly files a Section

3582(c)(1)(A) motion, such that courts may exercise discretion in determining

whether a prisoner has shown extraordinary and compelling circumstances

warranting compassionate release. *United States v. McCoy*, 981 F.3d 271, 281–83

(4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020);

*United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Currently, no

Circuit Court has clearly endorsed in a published opinion the opposite holding that

the policy statement in U.S.S.G. § 1B1.13 applies to Section 3582(c)(1)(A)

motions filed directly by prisoners and binds courts' determination of

extraordinary and compelling circumstances.

This court finds the reasoning of the Second, Fourth, Sixth, and Seventh Circuits persuasive and notes that such reasoning appears to complement the Eleventh Circuit's recent observation in an unpublished opinion that the policy statement in U.S.S.G. § 1B1.13 "notably" has not been updated since the passage of the First Step Act and refers only to motions filed by the Director of the Bureau of Prisons. *Gist*, No. 20-13481, 2020 WL 7227282, at *1. Further, reading the policy statement as inapplicable and nonbinding does not mean that it cannot offer guidance in determining extraordinary and compelling circumstances for Section 3582(c)(1)(A) motions filed by prisoners. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (stating that, "[a]lthough not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release"). Thus, a finding that the policy statement is not applicable and not binding does not necessarily conflict with the Eleventh Circuit's unpublished opinion in *Wedgeworth* and its reference to the policy statement and commentary. *See Wedgeworth*, No. 20-12316, 2020 WL 7389350, at *1–*2.

The policy statement in U.S.S.G. § 1B1.13 begins "[u]pon motion of the Director of the Bureau of Prisons" and the commentary states that a reduction in sentence under U.S.S.G. § 1B1.13 "may only be granted upon a motion by the

11

Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. 4. This court agrees with the current published jurisprudence from the Circuit Courts that, therefore, the policy statement applies only to motions filed by the Director of the Bureau of Prisons and does *not* apply to Section 3582(c)(1)(A) motions filed directly by prisoners after the passage of the First Step Act. *See Brooker*, 976 F.3d at 236; *see also McCoy*, 981 F.3d at 281–83; *Jones*, 980 F.3d at 1109–11; *Gunn*, 980 F.3d at 1180–81. Therefore, courts are not constrained by U.S.S.G. § 1B1.13 and its commentary when determining whether a prisoner has made the requisite showing to qualify for compassionate release under Section 3582(c)(1)(A). *See Brooker*, 976 F.3d at 237.

## III.   DISCUSSION

In his motion for compassionate release, Mr. Topete asserts that he is in extreme danger from the COVID-19 pandemic because of his diabetes—an underlying condition identified by the CDC as a risk factor for contracting a severe case of COVID-19—and because prison makes it impossible to practice the disease-prevention measures recommended by the CDC. (Doc. 838). Additionally, Mr. Topete asserts that he is in danger because his previous case of COVID-19 attacked his heart and caused a heart attack. He notes that he had to go to two different hospitals before he could receive treatment from a cardiologist for the heart attack. Mr. Topete states that he is now scared for his life if he contracts

the virus again.  He adds that he has had a good history in prison and has no history of violence.  He also provides a release plan, should the court see fit to grant him compassionate release.  He states that he has places that he can live with his family in the United States and in Mexico, should he be deported.  (*Id.*).

The government filed a response in opposition to Mr. Topete's motion for compassionate release.  (Doc. 852).  The government argues that Mr. Topete failed to show extraordinary and compelling reasons warranting compassionate release because his medical records show that he did not actually have a heart attack when he previously contracted COVID-19; he merely had an incident of tachycardia and pneumonia.  The government also states that Mr. Topete's previous case of COVID-19 was not terminal and proved that he can survive the virus.  The government argues that, despite having had the virus, Mr. Topete has recovered and can still take care of himself within the prison environment.  The government asserts that, for all of those reasons, Mr. Topete's health concerns do not qualify as extraordinary and compelling reasons for compassionate release under the applicable policy statements.   Finally, the government argues that the court should not grant Mr. Topete compassionate release because he presents a danger to the community based on his previous involvement in the drug trade and because the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support his early release. (*Id.*).

13

With the assistance of counsel, Mr. Topete then filed a response in support of his original motion seeking compassionate release.  (Doc. 859).  In his response, Mr. Topete states that he suffers from four risk factors recognized by the CDC as making someone more likely to contract a serious case of COVID-19: type 2 diabetes, obesity, a heart condition, and a newly-diagnosed liver condition found only upon review of his medical records for this case.  Mr. Topete argues that he is at a high risk of contracting severe COVID-19 because of his underlying conditions and because of his presence in a correctional institution, where there are unique challenges to controlling the spread of the virus.  He states that an outbreak of COVID-19 at the prison could occur at any time and he would likely not be able to get necessary medical assistance if he contracted the virus because of a lack of nearby hospitals with ICU capacity.  In support of his contentions, Mr. Topete attaches a Declaration from Dr. Turner, in which Dr. Turner states that, based on review of Mr. Topete's records, Mr. Topete is very likely to experience severe or fatal COVID-19 if he contracts the virus again.  Dr. Turner also provides extensive information about the difficulty of containing the spread of COVID-19 in prisons and information showing that reinfection with COVID-19 is possible.  Mr. Topete argues that his health conditions qualify as extraordinary and compelling in part because there is no applicable policy statement that confines the court's determination of what constitutes extraordinary and compelling circumstances in

14

this case.  (*Id.*).

Mr. Topete additionally asserts that the factors set forth in Section 3553(a) also support a reduction in his sentence because he had no criminal history prior to his conviction, he has had a good disciplinary record in prison, and he has taken advantage of multiple educational opportunities in prison.  (Doc. 859).  He notes that he will face deportation after his release, which creates an additional consequence for his crime.  To bolster his case, he requests that—assuming that he is not deported—the court impose a term of home confinement for a term equal or more than his remaining sentence as a condition of his release, which would allow him to serve his full sentence without the health risks of incarceration.  (*Id.*).

In this case, the government does not dispute that Mr. Topete has properly exhausted his administrative remedies.  (Doc. 852 at 3).  Thus, the court can consider the merits of Mr. Topete's motion for sentence reduction.  Because, as discussed above, no Sentencing Commission policy statement applies to a Section 3582(c)(1)(A) motion like Mr. Topete's filed directly by a prisoner, the court must determine whether Mr. Topete has shown "extraordinary and compelling reasons" warranting a reduction in sentence and whether consideration of the Section 3553(a) factors supports compassionate release.  *See Brooker*, 976 F.3d 228, 236–37; 18 U.S.C. § 3582(c)(1)(A).

Here, extraordinary and compelling reasons warrant a reduction in Mr. Topete's sentence.  Mr. Topete is 53 years old and his medical records, as interpreted by Dr. Turner, show that he is obese, hypertensive, and has type 2 diabetes.  (Doc. 852-2; doc. 852-3; doc. 859-7).  Further, Dr. Turner opined that Mr. Topete appeared to have a previously undiagnosed chronic liver condition and "may very well have lasting cardiac complications" from his previous bout of COVID-19.  (Doc. 859-7 at 9–11). The CDC identifies type 2 diabetes and obesity as underlying conditions that put people "at increased risk of severe illness" from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 5, 2021). Additionally, the CDC notes that people who suffer from hypertension, liver disease, or general cardiovascular problems "might" be at an increased risk of severe illness from COVID-19.  *See id.*; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 5, 2021).  The CDC has also stated that individuals aged 50-64, like Mr. Topete, are 25 times more likely to be hospitalized with COVID-19 and 400 times more likely to die from COVID-19 than individuals who are 5-17 years old.  *See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last visited March 5, 2021).

Accordingly, Mr. Topete has a combination of multiple risk factors that put him at an increased risk of having a particularly severe case of COVID-19 if he contracts the virus again.  In fact, after reviewing Mr. Topete's medical records, Dr. Turner specifically stated that Mr. Topete's risk factors "make him extremely high risk for a severe outcome, including death," if he gets COVID-19 again; Dr. Turner went on to conclude that, in his professional opinion, "Mr. Topete is particularly vulnerable to infection" with COVID-19, and "[i]f reinfected, he is highly likely to experience severe and potentially fatal COVID-19."  (Doc. 859-7 at 8, 12).  Moreover, Dr. Turner stated that current evidence shows that people who have previously gotten COVID-19 can get a second case, so Mr. Topete remains at risk despite having previously contracted the virus.  (*Id.* at 6); *see also* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited March 5, 2021) (stating that the CDC has seen reported cases of reinfection with COVID-19).  Dr. Turner based his conclusions not only on his review of Mr. Topete's records and his general medical experience, but also his specific expertise dealing with COVID-19.  (Doc. 859-7 at 2–3).

Additionally, Mr. Topete's risks are further compounded by the lack of available emergency care, should he get a severe case of COVID-19.  When Mr. Topete had his first COVID-related cardiac incident, he had to go to two different hospitals to get effective treatment.  (Doc. 838).  Further, Mr. Topete has presented

17

evidence that CI McCrae lacks easy access to hospitals likely to have the necessary ICU capacity to deal with a severe case of COVID-19.  (Doc. 859 at 14) (citing Fred Schulte, Elizabeth Lucas, et. al., "Millions Of Older Americans Live In Counties With No ICU Beds As Pandemic Intensifies," KAISER HEALTH NEWS (March 20, 2020), https://khn.org/news/as-coronavirus-spreads-widely-millions-of-older-americans-live-in-counties-with-no-icu-beds/ (last visited March 5, 2021) (providing a graphic of available ICU beds around the country)).  This lack of easy access to medical care increases the risk that, if Mr. Topete contracts COVID-19, he will have a very severe or even fatal case of the virus.

Thus, Mr. Topete clearly is at increased risk of getting a severe or fatal case of COVID-19 compared to the average American.  The CDC has emphasized that it is especially important for people at an increased risk of getting a serious case of COVID-19 to protect themselves and has recommended that that they limit their interactions with other people as much as possible and take precautions against contracting the virus.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 5, 2021).  However, being in prison complicates Mr. Topete's ability to take those recommended precautions.

Dr. Turner states in his Declaration that prisons are ill-equipped to stop the spread of COVID-19 because of a lack of effective tools to take precautions

18

against the spread of the virus.  (Doc. 859-7 at 6–8).  Other research supports this

opinion, with one research letter stating that COVID-19 "represents a challenge to

prisons because of close confinement [and] limited access to personal protective

equipment."  Brendan Saloner, et. al, *COVID-19 Cases and Deaths in Federal and*

*State Prisons*, 324 JAMA 6 (2020); *see also* Patricia Davidson, et al., *Open Letter*

*to Hon. Larry Hogan, Governor of Maryland*, https://bioethics.jhu.edu/wp-

content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-

prisons.pdf (last visited March 5, 2021) (letter from numerous faculty members at

Johns Hopkins University schools of medicine, nursing, and public health stating

that prisons are associated with high transmission rates of infectious diseases and

opining that the close quarters, inability to social distance, and lack of resources for

sanitization in prisons heightens the COVID-19 risk).  Obviously, being in prison

increases Mr. Topete's risk from COVID-19.

Mr. Topete's risk is somewhat mitigated by the fact that, as of January 12,

2021, CI McCrae where Mr. Topete is incarcerated is not reporting any active

cases of COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visited March 5,

2021).  But multiple district courts have recognized that "the fact a prison has no

confirmed open cases today does not provide much assurance in the current

environment."  *United States v. Tate*, No. 17-CR-30037, 2020 WL 3791467, at *4

(C.D. Ill. July 7, 2020) (quoting *United States v. Nicholson*, No. 09-cr-00058-RP-

CFB (S.D. Iowa, June 6, 2020) and collecting cases from other districts).  New cases can come into prisons, even when the actual prisoners are isolated, through staff coming in and out.  *See* Timothy M. Smith, *What's Driving COVID-19 in Prisons and Jails—and How To Fix It*, https://www.ama-assn.org/delivering-care/ethics/what-s-driving-covid-19-prisons-and-jails-and-how-fix-it (last visited March 5, 2021) (article from the American Medical Association stating that jails and prisons are not sealed off from the outside world, and thus from COVID-19 outbreaks, because of prison staff).  If COVID-19 does come into the prison then, "[d]ue to the conditions under which inmates live, they are at extreme risk of infection once COVID-19 breaches prison walls."  *United States v. Potts*, No. 06-80070-CR, 2020 WL 5540126, at *3 (S.D. Fla. Sept. 14, 2020).

Against the background of these facts, Mr. Topete has shown "extraordinary and compelling reasons" warranting a reduction in his sentence.  18 U.S.C. § 3582(c)(1)(A).  The combination of Mr. Topete's age, various pre-existing conditions, risk of exposure to the virus while in prison, and lack of reliable hospital access suggests that he is at extraordinary risk of contracting a severe or even fatal case of COVID-19.  *See* (Doc. 859-7 at 8, 12).  Therefore, his health problems—when viewed through the lens of the current COVID-19 pandemic—support a finding of "extraordinary and compelling" circumstances warranting compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

Because Mr. Topete has shown extraordinary and compelling circumstances warranting a sentence reduction, the court must examine the application of the factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A).  The court finds that the Section 3553(a) factors support granting Mr. Topete compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) requires courts to impose sentences that are "sufficient, but not greater than necessary" for a person's crimes, taking into consideration a multitude of factors.  Those factors include, among other things, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment, and the types of sentence available.  18 U.S.C. § 3553(a).  Here, the factors support a reduction in Mr. Topete's sentence.

Perhaps the most relevant consideration in this case is that, even at the time of Mr. Topete's original sentencing, this court considered varying downward from the Sentencing Guidelines and imposing a sentence of 20 years' imprisonment because of Mr. Topete's lack of criminal history.  (Doc. 679 at 51–61).  The court stated that a 27-year sentence was a "long, long prison sentence even for a major drug dealer," but especially for someone with no prior criminal record.  (*Id.* at 52).  Ultimately, however, the court made a "hard decision" and, emphasizing that it was "close," determined that the 27-year minimum sentence under the Sentencing Guidelines was reasonable because the quantity of drugs at issue was so large and

because the sentence reflected the seriousness of the offense, promoted respect for the law, provided just punishment, and protected the public. (*Id.* at 58–60). Mr. Topete's behavior in prison and the imminent threat of COVID-19 change the "close decision" that the court originally considered and support reducing Mr. Topete's sentence.

Mr. Topete's history and characteristics weigh in favor of a sentence reduction. This court strongly considered lowering Mr. Topete's sentence based on his lack of criminal history when his sentence was originally imposed; now, Mr. Topete's history provides even more reason for a lower sentence because of his prison record, which reflects his efforts at rehabilitation. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (stating that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing"). While in prison, Mr. Topete has taken more than 20 educational courses, has not had a disciplinary incident in a decade, and has never had a violent disciplinary incident in prison. (Doc. 859-11 at 1–2). This continued positive history weighs in favor of reducing his sentence.

Further, at Mr. Topete's original sentencing, the court found that a minimum guideline sentence was appropriate because it was sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for law, and

provide just punishment.  But the punishment element of Mr. Topete's sentence has recently been ratcheted up as compared to when the sentence was initially imposed; Mr. Topete's sentence has become more harsh because of the risk of fatality due to COVID-19 and his many risk factors.  Therefore, the calculation of what sentence is sufficient but not greater than necessary for his crimes has changed.  In light of that change, the court finds that a sentence of time served correctly balances the seriousness of his offenses with the increased seriousness of his punishment in light of COVID-19, such that his custodial sentence as currently served still reflects the seriousness of the offense, promotes respect for law, and provides just punishment for his crimes.  *See* 18 U.S.C. § 3553(a).  Therefore, reducing Mr. Topete's sentence to time served provides a sufficient but not excessive sentence for his crimes.  *See* 18 U.S.C. § 3553(a).

## IV.   CONCLUSION

Accordingly, the court finds that Mr. Topete has shown extraordinary and compelling circumstances warranting a reduction in sentence and will grant Mr. Topete's motion for compassionate release.  (Doc. 838).  The court will reduce Mr. Topete's custodial sentence to time served.  Mr. Topete shall be remanded to the custody of the U.S. Marshall Service for surrender to an authorized Bureau of Immigration and Customs Enforcement official for deportation proceedings in accordance with the Immigration and Nationality Act.  Assuming he avoids

deportation, Mr. Topete will begin to serve his originally imposed five-year term of supervised release, as set forth in his judgment.  (Doc. 620).

Additionally, for the safety of Mr. Topete and the community, if he is not in immigration custody he shall self-quarantine at his approved residence for 14 days upon his release, except for necessary medical treatment and only upon prior notice and approval by the probation officer, except in a true emergency.

**DONE** and **ORDERED** this 5th day of March, 2021.

Sharon Lovelace Blackburn
_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE